UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DORIAN WALKER,

        Plaintiff,

vs.

BADAWI ABDELLATIF, *et al.*,

        Defendants.

                              /

Case No. 1:07-cv-1267

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants Sherri Castenholz[1] and Michael Wilkinson (docket no. 18) and a motion to dismiss filed by defendants Badawi Abdellatif, M.D. and Daniel Spitters, P.A. (docket no. 30). Plaintiff has not filed a response to either motion.

    **I.**        **Background**

Plaintiff's allegations arise from events that occurred at E. C. Brooks Correctional Facility (LRF) and can be summarized as follows. Plaintiff arrived at LRF on September 1, 2006. Compl. ¶ 1. On February 2, 2007, he was called out to health services for problems with his knees, at which time he advised defendant Nurse Castenholz of stomach problems, i.e., blood in the stool and symptoms of ulcerative colitis which he had suffered from since age 15. *Id.* at ¶ 2. Castenholz stated that she would refer plaintiff to a Medical Service Provider (MSP) (a physician or physician's

---

[1] Defendant Sherri Castenholz is also referred to in this litigation as Sherri Castinholz and Sherri Castenholtz.

assistant) regarding the colitis. *Id* at ¶ 3. Plaintiff submitted a health care kite on February 5th, requesting to be seen for unbearable stomach pain. *Id.* at ¶ 4. On February 6th, plaintiff spoke to Nurse Castenholz regarding stomach pain and bloody stools. *Id.* at ¶ 6. Castenholtz told plaintiff to increase his fluid intake and collect a stool sample. *Id.* at ¶¶ 6-7. She examined him the next day. *Id.*

On February 8th, defendant P.A. Spitters called out plaintiff for an examination, at which time plaintiff advised Spitters of his symptoms and past history of colitis. *Id.* at ¶ 8. P.A. Spitters ordered blood work and Zantac (an antacid). *Id.* Defendant Nurse Wilkinson took a blood draw at an unknown date and told plaintiff that a doctor would call him for a followup. *Id.* at ¶ 9.

Plaintiff continued to suffer pain and bloody stools. *Id.* at ¶ 10. On March 15th, he requested to see a doctor. *Id.* Plaintiff saw defendant Dr. Abdellatif the next day. *Id.* at ¶ 11. Plaintiff advised the doctor of his past treatment for colitis at Children's Hospital in Detroit and requested a specialist. *Id*. Dr. Abdellatif stated that he would review the hospital records. *Id.* Plaintiff also told the doctor that the prescribed medication made him vomit and that he had lost weight. *Id.* The doctor ordered a new medication and told plaintiff to kite the dietician to evaluate his weight loss. *Id.*

On April 14th, plaintiff sent kites to the dietician and health care regarding stomach pain, bloody stools and weight loss. *Id.* at ¶¶ 12-13. Plaintiff saw the dietician on April 19th. *Id.* at ¶ 15. Plaintiff sent another health care kite for stomach pain, vomiting and bloody stools on April 29th. *Id.* at ¶ 16. On May 1st, plaintiff wrote a grievance against the health services staff, asserting that they did not take his health care needs seriously. *Id.* at ¶ 17.

On May 15th, plaintiff had still not been called out by a doctor or nurse. *Id.* at ¶ 18. Plaintiff became unresponsive and faint while speaking with a corrections officer. *Id.* at ¶ 19. Plaintiff was transported to Mercy General hospital for treatment. *Id.* Plaintiff was discharged from the hospital on May 29th, where he had been diagnosed with Crohn's Disease. *Id.* at ¶¶ 19-22. On June 1st, he was called out for new medication related to this diagnosis (Prednisone, potassium tabs and Balsalazide Disodium). *Id.* at ¶ 23.

On June 18th, plaintiff was called out by P.A. Spitters. *Id.* at ¶ 24. At this time, plaintiff advised Spitters that he had a rash on his back and chest after taking the Balsalazide Disodium. *Id.* at ¶ 24. P.A. Spitters examined plaintiff, and determined it was either a heat rash or an allergic reaction to the medication, and that he should continue taking the medication. *Id.* at ¶¶ 25-26.

On July 3rd, plaintiff was called out by Nurse Wilkinson, who examined plaintiff's back and chest, and asked P.A. Spitters to evaluate the condition. *Id.* at ¶¶ 28-29. P.A. Spitters believed the rash was an allergic reaction to the Balsalazide Disodium. *Id.* at ¶ 30. Spitters and Wilkinson told plaintiff not to stop taking the medication, because there was no other medication for Crohn's approved by the MDOC. *Id.* at ¶ 32. Wilkinson ordered plaintiff a two week supply of Benedryl. *Id.*

Plaintiff stopped taking the Balsalazide Disodium on July 7th. *Id.* at ¶ 34. Plaintiff kited the health care on July 11th and 27th regarding his stomach pain. *Id.* at ¶¶ 35, 38. He was called out to give health care a stool sample at an "unknown date." *Id.* at ¶ 36. Plaintiff wrote another grievance against the health care service on July 30th, complaining that the staff ignored his health care needs. *Id.* at ¶ 39. On August 2, 2007, plaintiff was seen by Dr. Abdellatif. *Id.* at ¶ 40.

Plaintiff told the doctor that his rash cleared up when he stopped taking the Balsalazide Disodium, but that he now had stomach pain. *Id.* Dr. Abdellatif changed plaintiff's medication from Balsalazide Disodium to Sulfasalazine. *Id*. Plaintiff seeks damages of $5,000,000.00.

## II. Nurse Castenholz' and Nurse Wilkinson's motion for summary judgment

### A. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, -- U.S. --, 127 S. Ct. 1774, 1776 (2007).

      **B.**    **Exhaustion**

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. The PLRA requires prisoners to comply with the prison's grievance procedures in order to properly exhaust a claim. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedures for prisoners in MDOC custody. Here, the MDOC amended the policy directive on March 5, 2007 and July 9, 2007. The March 2007 version was in effect when plaintiff filed his May 1st grievance, while

the July 2007 version was in effect when plaintiff filed his July 30th grievance. Both versions required plaintiff to follow a three-step grievance process to exhaust a claim. At issue in this case is whether plaintiff properly identified the parties in his grievance. Both versions of the policy directive require the following information in the Step I grievance: "The issues should be stated briefly but concisely. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." Policy Directive 03.02.130 ¶ R (eff. March 5, 2007); Policy Directive 03.02.130 ¶ T (eff. July 9, 2007) (emphasis in originals).

The record reflects that plaintiff filed three grievances related to his medical treatment. MDOC Defendants' Exh. D.[2] Plaintiff filed Grievance LRF 07030039112D1 regarding an incident date of February 28, 2007, which involved the treatment of a hip and knee problem. MDOC Defendants' Exh. E. This grievance is not relevant to any claim in this action.[3]

Plaintiff filed Grievance LRF 07050073112D1 ("D1") on May 1, 2007. MDOC Defendants' Exh. F. In this grievance, plaintiff claimed that he had been trying to get medical attention for ulcers since February of 2007. *Id.* Plaintiff did not name any individuals in the Step I grievance other than the "doctor." *Id.* In his Step III appeal, plaintiff referenced defendants Abdellatif and Spitters. *Id.*

Plaintiff also filed grievance LRF 07070120812F ("2F") on July 30, 2007. MDOC Defendants' Exh. G. This grievance names defendants Castenholz, Wilkinson, Spitters and Badawi

---

[2] Exhibits attached to the brief in support of summary judgment filed by defendants Castenholz and Wlkinson will be referred to "MDOC Defendants' Exh. __."

[3] The court notes that this grievance would fall under a third version of Policy Directive 03-02.130 (effective Dec. 19, 2003).

[Abdellatif], with respect to the treatment of his allergic reaction. *Id.* Plaintiff appealed this grievance through Step III.

Nurse Castenholz and Nurse Wilkinson contend that plaintiff failed to identify them as a "person grieved" in Grievance D1 as required by Policy Directive. The court agrees. Grievance D1 is directed at the "health care staff at LRF" for their failure to treat plaintiff's stomach problems. While plaintiff named the doctor in the Step I grievance, he did not identify either Nurse Castenholz or Nurse Wilkinson as required by Policy Directive 03.02.130. Plaintiff has failed to properly exhaust his grievance with respect to the two nurses. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, the nurses' motion for summary judgment should be granted with respect to Grievance D1.

However, the record reflects that plaintiff named both Nurse Castenholz and Nurse Wilkinson in Grievance 2F regarding the treatment of his allergic reaction. Accordingly, the claim in this grievance has been exhausted as to these two nurses, and will be considered below.

## C. Eighth Amendment claim

Plaintiff alleges that Nurse Castenholz and Nurse Wilkinson were deliberately indifferent to his allergic reaction. It is well established that an inmate has a cause of action under 42 U.S.C. § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively

7

harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

**1. Nurse Castenholz**

Plaintiff does not allege that Nurse Castenholz provided any treatment with respect to his allergic reaction that occurred in July 2007. In this regard, plaintiff's MDOC Health Care

record does not reflect that Castenholz treated this particular ailment. *See* MDOC Defendants' Exh. A. Defendant Castenholz is entitled to summary judgment on this claim.

### 2. Nurse Wilkinson

Nurse Wilkinson evaluated plaintiff on July 3, 2007, found that plaintiff had a rash on his back and chest, and discussed his findings with P.A. Spitters. MDOC Defendants' Exh. A. Plaintiff was given Benadryl for the rash upon P.A. Spitters' verbal orders. *Id.* Wilkinson followed up on plaintiff's case by preparing a list of plaintiff's medication on July 6, 2007. Wilkinson Aff at ¶ 6, MDOC Defendants' Exh. C. Nurse Wilkinson had limited involvement with the treatment of plaintiff's allergic reaction. The undisputed record establishes that Wilkinson sought an opinion from P.A. Spitters and then secured Benadryl to treat plaintiff's rash. There is no evidence that Nurse Wilkinson was deliberately indifferent to the treatment of plaintiff's allergic reaction. Accordingly, defendant Wilkinson is entitled to summary judgment on this claim.

### III.   Dr. Abdellatif's and P.A. Spitters' motion to dismiss

#### A.   Legal Standard

Defendants Dr. Abellatif and P.A. Spitters have moved to dismiss plaintiff's action pursuant to Fed. R. Civ. P. 12(b)(6). Under this rule, a complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir.2005). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be

accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action . . . [t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citations omitted).

### B. Exhaustion

These two defendants have moved to dismiss plaintiff's complaint for lack of exhaustion. A defendant can raise affirmative defenses in a motion to dismiss. *See, e.g., Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005) (defendant could properly raise the affirmative defense of qualified immunity "based on a pre-answer motion to dismiss"); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("Like other Rule 12(b)(6) motions to dismiss, a motion to dismiss on statute of limitations grounds should be granted when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief. A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.") (internal quotation marks and citations omitted).

It is appropriate for defendants in a prisoner civil rights action to raise the affirmative defense of failure to exhaust administrative remedies in a motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir.), cert. denied -- S. Ct. --, 2008 WL 452247 (2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense [under the PLRA] . . . is not ordinarily the proper subject for a

summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment. *Id.* (internal quotation marks omitted).

The MDOC grievance procedure is an administrative review regulated by the agency's Policy Directives. This court may take judicial notice of plaintiff's grievance filings in this state agency proceeding for purposes of deciding a motion to dismiss. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion, but may only take judicial notice of facts which are not subject to reasonable dispute); *Marshek v. Eichenlaub*, No. 07-1246, 2008 WL 227333 at *1 (6th Cir. Jan. 25, 2008) (court can take judicial notice of prisoner's transfer as shown in the Bureau of Prison's Inmate locator accessed on the agency's official website); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991) ("[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"); *Walker v. Woodford*, 454 F.Supp.2d 1007, 1021-23 (S.D.Cal. 2006) (the Court may consider a limited set of documents without converting a Rule 12(b)(6) motion into a motion for summary judgment, including matters that can be judicially noticed; documents pertaining to the prisoner's exhaustion efforts "are part of a state administrative proceeding and may be judicially noticed, not for the truth of their contents but for the fact that the grievance proceeding occurred"); *Smart v. Goord*, 441 F.Supp.2d 631, 637 (S.D.N.Y. 2006) ("[w]hen ruling on a motion to dismiss, the Court may take judicial notice of records and reports of administrative bodies, items in the record of the case, matters of general public record, and copies of documents attached to the complaint"); *Eggerson v. United States*, 1: 05-cv-594, 2006 WL 1720252 at *3 (W.D.Mich. June 22, 2006) ("In

ruling on a motion under Rule 12(b)(6), the court may supplement the facts alleged in the pleadings by considering facts susceptible to judicial notice under Fed.R.Evid. 201"); *Keating v. University of South Dakota*, 386 F.Supp.2d 1096, 1102 (D.S.D. 2005) (court took judicial notice of administrative proceedings filed by defendants pursuant to Fed.R.Evid. 201); *Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 129 F.Supp.2d 578, 580-581 (W.D.N.Y. 2000) (although documents filed by plaintiff and defendants with various agencies were not attached to plaintiff's complaint, court could properly consider the documents on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6); plaintiff had notice of the documents and relied upon them in bringing this action).

Such judicial notice is consistent with the purpose of the PLRA's "invigorated" exhaustion provision, which Congress enacted to control the "sharp rise in prisoner litigation in the federal courts." *Woodford*, 548 U.S. at 84. One reason for creating prisoner grievance procedures under the PLRA was to create such an administrative record for the court. "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 549 U.S. at 204.

In Grievance D1, plaintiff names the "health care staff at LRF" and the doctor for failing to provide adequate treatment for his stomach ailment. Plaintiff's reference to the "doctor" sufficiently identified defendant Dr. Abdellatif, the doctor who treated plaintiff at LRF. However, plaintiff did not identify P.A. Spitters in the Step I grievance. While plaintiff named P.A. Spitters in his Step III appeal, this is insufficient to meet the requirements of Policy Directive 03.02.130 ¶

R (eff. March 5, 2007), which requires the prisoner to name the person grieved at Step I. Grievance D1 is exhausted as to Dr. Abdellatif, but unexhausted as to P.A. Spitters .

In Grievance 2F, plaintiff named both Dr. Abdellatif and P.A. Spitters with respect to the treatment of his allergic reaction. Plaintiff appealed this grievance through Step III. Grievance 2F is exhausted as to both of these defendants.

### C. Eighth Amendment claims

#### 1. Dr. Abdellatif

Plaintiff's claims against Dr. Abdellatif arise from two visits with the doctor. First, plaintiff alleges that on March 16, 2007, he requested a specialist and informed the doctor that the medication prescribed in February 2007 made him vomit. In response, the doctor prescribed a new medication. Second, plaintiff alleges on August 2, 2007, plaintiff advised the doctor that since he stopped taking one medication for the Crohn's disease (Balsalazide Disodium), his allergic reaction cleared up but he was having stomach pains. In response to this problem, Dr. Abdellatif changed plaintiff's medication to Sulfasalazine.

This alleged treatment on March 16th and August 2nd does not suggest an Eighth Amendment violation. On both occasions, plaintiff complained about the effects of a medication (vomiting and an allergic reaction), and the doctor responded by changing the respective prescriptions to alleviate the side effects. These medication adjustments involve the doctor's medical judgment regarding plaintiff's treatment. Plaintiff's disagreement with the health care providers regarding his diagnosis and treatment does not rise to the level of a federal constitutional violation. *See Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute

deliberate indifference"); *Smith v. Sator*, 102 Fed.Appx. 907, 909 (6th Cir. 2004) ("differences of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do not state an Eighth Amendment claim") (*citing Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (a prisoner's disagreement with a course of medical treatment does not state a federal constitutional claim). Similarly, plaintiff's request for a specialist is nothing more than a disagreement with Dr. Abdellatif regarding his diagnosis and treatment, which does not rise to the level of a federal constitutional violation. *Id.* Accordingly, defendant Dr. Abdellatif's motion to dismiss should be granted.

### 2. P.A. Spitters

Plaintiff's remaining claim against P.A. Spitters involves his treatment of the allergic reaction. Plaintiff apparently disagrees with P.A. Spitters' course of treatment to determine the cause of the allergic reaction. Plaintiff alleges that he picked up three medications for his recently diagnosed Crohn's Disease on June 1st. On June 18th, P.A. Spitters thought that one of his medications might have been causing the reaction, but felt that plaintiff should stay on all of his medications for Crohn's disease. By July 3rd, Spitters determined that plaintiff had an allergic reaction to one of those medications and verbally ordered Benadryl. Plaintiff apparently contends that P.A. Spitters was deliberately indifferent to his serious medical needs because it took Spitters 15 days to determine the source of the allergic reaction and he told plaintiff to remain on the medication that may have caused the reaction. The court disagrees. Assuming that these allegations are true, P.A. Spitters was faced with the choice of discontinuing new medications for a recently diagnosed and serious condition (Crohn's disease), or continuing the new medications with the possibility that one or more of these medications caused rash. This situation involved the exercise

of P.A. Spitters' medical judgment. As previously discussed, although plaintiff may disagree with P.A. Spitters judgment on this matter, a prisoner's disagreement with the health care providers regarding his diagnosis and treatment does not rise to the level of a federal constitutional violation. *See Woodberry*, 146 Fed.Appx. at 977; *Sator*, 102 Fed.Appx. at 909; *Marcantonio*, 910 F.2d at 502; *Westlake*, 537 F.2d at 860 n. 5. Accordingly, the court should grant P.A. Spitters' motion to dismiss.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that both the motion for summary judgment filed by Nurses Castelholz and Wilkinson (docket no. 18) and the motion to dismiss filed by Dr. Abdellatif and P.A. Spitters be **GRANTED**.

Entered: February 13, 2009            /s/ Hugh W. Brenneman, Jr.
                                      Hugh W. Brenneman, Jr.
                                      U.S. Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within eleven (11) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).